**2026 UT App 122**

## THE UTAH COURT OF APPEALS

IN THE MATTER OF THE PARENTAGE OF THE CHILD OF
KEARY LAMAR WATSON AND REBECCA PRESTWICH

KEARY LAMAR WATSON
Appellee,
*v.*
REBECCA PRESTWICH
Appellant.

Opinion
No. 20231037-CA
Filed August 6, 2026

Fourth District Court, Provo Department
The Honorable Robert A. Lund
No. 204400976

Rebecca Prestwich, Appellant Pro Se

Sheleigh A. Harding, Guardian ad Litem

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
FORSTER concurred.

MORTENSEN, Judge:

¶1 Rebecca Prestwich appeals the district court's award to Keary Watson of sole physical and legal custody of a child (Child) they had together in 2010. Prestwich's complaints center on allegations that the district court improperly determined that she was a vexatious litigant and exceeded its discretion in its custody and child support orders. All of Prestwich's claims of error are unavailing, and we affirm the district court's orders.

BACKGROUND

¶2      In September 2019, Watson, who lived in Oregon, filed a petition for parentage in Utah's Third District Court. Child was nine years old at the time and had been in the exclusive care of Prestwich for her entire life. Watson asked for joint legal custody, with Prestwich—who lived in Utah—having physical custody. He also requested parent-time during summer breaks and additional parent-time in the event that he and Prestwich lived within 150 miles of each other.

¶3      The Third District parentage case was transferred to the Fourth District in March 2020. Prestwich, who subscribes to sovereign citizen ideology, did not substantially participate in the case, alleging that she was not subject to the court's jurisdiction.[1]

---

1. "Sovereign citizens believe the government is operating outside of its jurisdiction and generally do not recognize federal, state, or local laws, policies, or governmental regulations. They subscribe to a number of conspiracy theories, including a prevalent theory which states the United States Government . . . became bankrupt and began using citizens as collateral in trade agreements with foreign governments." Domestic Terrorism Operations Unit II, FBI, *Sovereign Citizens: An Introduction for Law Enforcement* 1 (2010), https://info.publicintelligence.net/FBI-SovereignCitizens. pdf [https://perma.cc/GC7H-GC86]. "It is well-established . . . that arguments based on sovereign citizen ideology are inherently frivolous, and should be summarily dismissed as a waste of judicial resources." *Riding v. Morgan Stanley & Co.*, No. 25-CV-00648, 2025 WL 3543006, at *2 (W.D. Mo. Dec. 10, 2025) (cleaned up); *see also Prelle v. United States Mint*, No. 24-5291, 2024 WL 4898064, at *4 (E.D. Pa. Nov. 26, 2024) (noting that federal courts "routinely dismiss claims of sovereign citizens based on a contractual relationship created by birth certificates as fictitious"); *Mackey v. Bureau of Prisons*, No. 15-CV-1934, 2016 WL 3254037, at

(continued…)

Prestwich subsequently filed a petition in the Fourth District Juvenile Court to terminate Watson's parental rights, a move that effectively stayed the other proceeding. Prestwich's case was dismissed in March 2021.

¶4    In July 2021, Watson filed a motion for leave to amend his petition for parentage in order to request physical and legal custody. Watson asserted that Prestwich's "erratic and irrational" court filings, along with Watson's concerns about her "mental health and well-being," indicated that she did not intend to comply with the court's parent-time orders. And Watson argued that it was in Child's best interest that Watson be awarded legal and physical custody and that Prestwich undergo a mental health evaluation and be limited to supervised parent-time. It does not appear that Watson formally filed the amended petition. But the court did grant Watson's motion for parent-time, including virtual weekly contact and one-half of the summer break. Prestwich appears not to have received this order well, an inference we glean from the issuance of the writ of assistance in late July to enable Watson to exercise his parent-time rights. Prestwich also did not welcome this intervention: she assaulted one of the officers during the execution of the writ—all while

---

*1 (E.D. Cal. June 14, 2016) ("Courts across the country have uniformly rejected arguments based on the sovereign citizen ideology as frivolous, irrational, or unintelligible." (cleaned up)); *United States v. Studley*, 783 F.2d 934, 937 n.3 (9th Cir. 1986) (noting that sovereign citizen legal arguments have been "consistently and thoroughly rejected by every branch of the government for decades" and that the "advancement of such utterly meritless arguments is now the basis for serious sanctions imposed on civil litigants who raise them"); *Trevino v. Florida*, 687 F. App'x 861, 862 (11th Cir. 2017) (per curiam) (collecting cases characterizing sovereign citizen legal theories as frivolous and baseless).

screaming about not being subject to the laws of Utah and ultimately being arrested.

¶5      In early September 2021, the court found that Child would "suffer irreparable injury" if returned to Prestwich's custody; that Prestwich had displayed "ongoing outrageous and harmful conduct," shown "erratic behavior," and expressed "seemingly delusional claims"; and that Prestwich refused "to acknowledge the authority of the Court and follow the Court's orders." Based on these findings, the court granted sole physical and legal custody to Watson and limited Prestwich to supervised parent-time through a temporary restraining order. *See* Utah Code § 81-9-207(2) ("A court may order supervised parent-time of a minor child . . . if the court finds . . . evidence that the minor child is likely to be subject to physical harm, emotional harm, or abuse from the noncustodial parent if left unsupervised with the noncustodial parent; . . . it is necessary to protect the minor child; and . . . there are no less restrictive means reasonably available."). After hearing from the parties, the court converted the temporary restraining order into a preliminary injunction in December 2021. Under the injunction, sole physical and legal custody was granted to Watson and supervised parent-time was granted to Prestwich.

¶6      In late September 2021, Prestwich filed a parentage petition in the Second District seeking sole physical and legal custody, but the judge denied it, observing that the Fourth District case was still being litigated. Prestwich also used the old Third District court case to get a writ of assistance in Oregon and attempted to take Child from school in Portland, but the school refused to release Child because the writ did not have Child's legal name.

¶7      In November 2021, the Fourth District court determined that Prestwich was a vexatious litigant: "Based on voluminous incoherent and frivolous court filings as well as repeatedly abusive telephone calls to the court's staff, the court finds [Prestwich] to be a vexatious litigant. Therefore, the court directs

[Prestwich] not to file any further pleadings pro se. Any legal filings on behalf of [Prestwich] must be filed by counsel as an officer of the court. The court further strikes all pending motions filed by [Prestwich] pro se. Counsel for [Prestwich] can refile any motions that counsel determines to be meritorious." Prestwich seemingly disregarded the vexatious litigant order as evidenced by an order to show cause in June 2022 regarding its violation. In November 2022, the court ordered Prestwich to appear to respond to accusations that she violated the vexatious litigant order twenty times. Additional orders to show cause as to Prestwich's vexatious litigant status followed in January and February 2023. At a contempt hearing in January 2023—where Prestwich was present and represented by counsel—the court stated that Prestwich had "literally filed hundreds . . . of documents with the Court [that] any person with legal training would find to be unintelligible." There, Prestwich stated that she understood she was not to personally file anything with the court or email court personnel. At another contempt hearing in February 2023—where Prestwich was again present and represented by counsel—the court found Prestwich in contempt and sanctioned her with thirty days in jail, but the court allowed her to purge her contempt by ceasing to file documents pro se. Even after being so informed, Prestwich stated for the record that she was simply trying to protect Child, prompting the court to reconsider whether she might be required to serve the thirty days. Fortunately for Prestwich, the hearing ended shortly thereafter without the court requiring her to serve the jail sentence. The court issued yet another order to show cause in June 2023 based on twelve instances of improper communication from Prestwich to court staff. At the subsequent hearing—which Prestwich did not attend but her counsel did—the court issued a civil bench warrant for her arrest and imposed the aforementioned jail sentence.

¶8      In August 2023, the trial in this matter was held. Watson appeared pro se. Prestwich did not appear at trial, but her counsel

represented her.[2] And a guardian ad litem (GAL) appeared for Child. Prestwich's counsel began by asking that the court deem admitted a number of admissions that had been served on Watson in March but that he did not answer. Apparently, some of these would have been very harmful if attributed to Watson. The district court declined to enter the admissions.

¶9    The court itself questioned Watson extensively. Watson testified that when he assumed custody of her, Child was suicidal, lacked basic skills like tying her shoes, struggled with bedwetting, and was emotionally underdeveloped. Additionally, he said her school attendance had been inconsistent. He noted that Prestwich struggled with severe mental health problems, making any visits a traumatic experience for Child. He provided evidence showing that even supervised interactions with Prestwich were emotionally abusive, highlighting a text message where Prestwich attacked Child, calling her a "little bitch" and accusing her of ruining her aunt's life.[3] Watson testified that despite this trauma, Child had made significant progress under his care, stating that Child had been working with a therapist, had developed better social skills, and had begun enjoying school. Finally, when asked what he wanted the court to do about the situation, Watson requested sole physical and legal custody and a mandate that Prestwich receive a psychological evaluation and be granted only supervised parent-time.

¶10    Prestwich's counsel began his cross-examination by asking Watson to address Prestwich's accusation that he was involved in sex trafficking and in procuring prostitutes. Watson responded by saying, "[T]hat's balderdash. That's nonsense." Then Prestwich's counsel asked him about the unanswered admissions, in

---

2. The court had expressly ordered her to appear in person.

3. Child's aunt, who is Prestwich's sister, supervised Prestwich's parent-time.

particular one that he represented as stating, "Please admit that you have raped, sexually assaulted, physically abused, emotionally abused, mentally abused, and/or exploited many women in the past, and continue to do so."[4] Prestwich's counsel said that this statement was "deemed admitted" by Watson's lack of responding to the request for admissions. The court jumped in and clarified, "It's not deemed admitted. The Court hasn't deemed it admitted. There was no motion ever before the Court to deem those admitted. And trying to do so now, I find it to be untimely." Nevertheless, the court afforded Watson the opportunity to answer, and he responded, "There's not truth in any of that."

¶11   Later in the trial, the GAL shared Child's perspective on the custody situation. The GAL reported that Child was deeply worried about Prestwich's mental health and hoped she would seek treatment in a residential facility for a month or two. Additionally, according to the GAL, Child mentioned that her aunt frequently had to end the visits she was supervising early due to Prestwich's inappropriate rants and outbursts. The GAL also reported that Child was happy living with Watson, enjoyed her school, and preferred that her current living arrangements stay the same. The GAL noted there was no evidence suggesting Watson was alienating Child from Prestwich. The GAL explained that while Child wanted to spend time with Prestwich, she was afraid that Prestwich might kidnap her. Ultimately, the GAL recommended that any parent-time with Prestwich be supervised by a family member to ensure Child remained safe.

¶12   At the conclusion of the trial, the court found that Watson was a good parent to Child and that Prestwich was "not mentally

---

4. As we explain later, the actual text of the request for admissions does not appear to be included in the record. *See infra* ¶ 27. The text here represents only the question asked by Prestwich's counsel.

[or] emotionally well." The court also found that Prestwich was emotionally abusive to Child. Based on these findings, the court granted sole physical and legal custody to Watson. The court granted closely supervised parent-time to Prestwich and ordered her to pay child support based on an imputed income. Prestwich appeals, raising multiple claims of error as identified below.

ISSUES AND STANDARDS OF REVIEW[5]

¶13 Prestwich first argues that the district court erred when it found her to be a vexatious litigant. She relatedly challenges the district court's orders to show cause and its findings that she was in contempt. "We employ three different standards of review in considering" a vexatious litigant determination. *Vashisht-Rota v. Howell Mgmt. Services*, 2021 UT App 133, ¶ 16, 503 P.3d 526 (per curiam) (cleaned up). We review (1) the court's findings of fact under a clearly erroneous standard, (2) its conclusion that a litigant ran afoul of rule 83 of the Utah Rules of Civil Procedure and "any subsidiary legal conclusions . . . under a correction of error standard," and (3) its determination regarding "sanctions to

---

5. Prestwich has made no effort in briefing to articulate a standard of review or to establish that any of the issues were preserved. *See* Utah R. App. P. 24(a)(5) ("The statement of the issue must set forth the issue presented for review, including for each issue: (A) the standard of appellate review with supporting authority; and (B) citation to the record showing that the issue was preserved for review; or a statement of grounds for seeking review of an issue not preserved."). Nor has she included comprehensible citations to the record for any of her assertions. She purports to be using a record-citation system, but whatever that system is, it does not correspond to the Bates numbering of the record on appeal and we have been unable to decipher it.

be imposed . . . under an abuse of discretion standard." *See id.* (cleaned up).

¶14 Prestwich next asserts that the district court abused its discretion in granting Watson relief not requested in his petition for parentage. Specifically, Prestwich complains that the district court erred in granting Watson sole legal and physical custody of Child, ordering Prestwich's parent-time to be supervised, and ordering Prestwich to pay child support when Watson did not ask for such relief in his petition. "We review custody determinations deferentially, and so long as the district court's discretion is exercised within the confines of the legal standards we have set, and the facts and reasons for the decision are set forth fully in appropriate findings and conclusions, we will not disturb the resulting award." *Kingston v. Kingston*, 2022 UT 43, ¶ 20, 532 P.3d 958 (cleaned up).

¶15 Prestwich's third claim is that the district court erred in not deeming as admitted pursuant to rule 36 of the Utah Rules of Civil Procedure various allegations in her request for admissions that was served on Watson. We review a district court's interpretation of a rule of procedure for correctness. *See Ostler v. Buhler*, 1999 UT 99, ¶ 5, 989 P.2d 1073.

¶16 Prestwich next argues that the district court abused its discretion in issuing a writ of assistance to Watson, a temporary restraining order, and a preliminary injunction. We review such orders for an abuse of discretion and "will not set aside a district court's conclusion unless it is so lacking in support as to be against the clear weight of the evidence." *Planned Parenthood Ass'n of Utah v. State*, 2024 UT 28, ¶ 43, 554 P.3d 998 (cleaned up).

¶17 Prestwich's fifth assertion is that the district court erred in ordering child support without making the necessary findings of fact. Specifically, Prestwich claims that the district court should not have imputed income to her without making the necessary

factual findings or considering the required statutory factors. *See* Utah Code § 81-6-203(6). "We review the district court's decisions regarding child support . . . under the abuse of discretion standard." *Pankhurst v. Pankhurst*, 2022 UT App 36, ¶ 13, 508 P.3d 612 (cleaned up). And "we review the legal adequacy of findings of fact for correctness as a question of law." *In re G.H.*, 2023 UT App 132, ¶ 25, 540 P.3d 631 (cleaned up).

¶18 Prestwich's sixth claim is that the district court erred in failing to make the necessary findings in support of its custodial determinations. We review custodial determinations deferentially. *See Kingston*, 2022 UT 43, ¶ 20. The adequacy of factual findings is reviewed for correctness. *In re G.H.*, 2023 UT App 132, ¶ 25 (cleaned up).[6]


ANALYSIS

I. Vexatious Litigant Determination

¶19 Prestwich first asserts that the district court erred when it determined that she was a vexatious litigant, and she relatedly challenges the court's orders to show cause and the findings that she was in contempt.

---

6. Prestwich also insists that this matter must be heard by a different district court judge on remand. She alleges that Judge Lund "effectively abused his discretion, violated every applicable court rule and statute with each and every ruling/order he . . . issued in this case, . . . [and showed] a disturbing course of conduct that can only be explained by bias/misogyny, disinterest, and incompetence." We have no occasion to entertain her request, not only because we are not remanding this case but because Judge Lund is now retired, making this issue moot.

¶20 Rule 83 of the Utah Rules of Civil Procedure authorizes a court to "find a person to be a 'vexatious litigant' if the person," among other actions, files three or more times unmeritorious, immaterial, or impertinent pleadings or papers. Utah R. Civ. P. 83(a)(1)(C). "Before entering an order [requiring a vexatious litigant to undertake certain enumerated actions], the court must find by clear and convincing evidence that . . . the party subject to the order is a vexatious litigant; and . . . there is no reasonable probability that the vexatious litigant will prevail on the claim." *Id.* R. 83(c)(1)(A)–(B). "In other words, the court cannot impose a vexatious litigant order on a pro se litigant whose claim before that court enjoys a reasonable probability of success." *Strand v. Nupetco Assocs. LLC*, 2017 UT App 55, ¶ 5, 397 P.3d 724.

¶21 As but a few examples demonstrate, there is no doubt that Prestwich's actions place her squarely in the category of a vexatious litigant. Her numerous filings included such things as a "notice of her intent to file a criminal incident report for kangaroo court case," a claim that she was "no longer under the jurisdiction of the maritime admiral law" and so was "not lawfully obligated to reply or acknowledge Satan's courts," threatening emails to court staff, and demands of large fees. In another filing, she appears to request dismissal of the case based on her assertion that she is "a living woman who now owns the fictional entity REBECCA PRESTWICH that was created without [her] permission." She goes on to make additional incoherent assertions echoing sovereign citizen ideology. We see no exaggeration in the court's finding that Prestwich had filed "literally hundreds . . . of documents," most of which "any person with legal training would find to be unintelligible." The court identified twenty instances of prohibited communications in its November 2022 order to show cause, along with another twelve instances of prohibited communications in its June 2023 order to show cause.

¶22 Prestwich's contention that she was denied due process in the vexatious litigant determination itself is without foundation. She claims that the "fact [she] was not provided notice and an opportunity to be heard, alone, is fatal to [the district court's] vexatious litigant order." She is mistaken. Rule 83 does not prohibit a court from sua sponte declaring a person to be a vexatious litigant. In other words, nothing in the rule requires notice and an opportunity to be heard before a person is *declared* a vexatious litigant. But the right to notice and an opportunity to be heard do come into play when orders are entered requiring a vexatious litigant to take certain actions. *See* Utah R. Civ. P. 83(b). And for any such orders, Prestwich was provided with notice by the orders to show cause noted above. And there were hearings on the orders to show cause related to the issue that allowed Prestwich the opportunity to be heard. The fact that she did not take advantage of these opportunities or that the results were not in her favor does not mean that her due process rights were violated. *See Bivens v. Salt Lake City Corp.*, 2017 UT 67, ¶ 54, 416 P.3d 338 (noting that due process challenges are waived by non-participation in proceedings). While the district court may not have explicitly stated that there was no reasonable probability that Prestwich could prevail on the nebulous claims in her filings that gave rise to its vexatious litigant determination, there is no doubt that her claims were simply without merit due to their incomprehensibility. To put it bluntly, a person cannot establish a reasonable probability of success merely by reciting idiosyncratic sovereign citizen ideology that lacks discernible legal significance. *See supra* note 1. Accordingly, Prestwich's challenge to the court's vexatious litigant determination fails.

## II. Scope of Watson's Relief

¶23 Prestwich next asserts that the district court abused its discretion in granting Watson more relief than he requested in his petition for parentage, specifically pointing to it granting sole legal and physical custody, ordering supervised parent-time for

Prestwich, and ordering Prestwich to pay child support. While we "review custody determinations deferentially," *Kingston v. Kingston*, 2022 UT 43, ¶ 20, 532 P.3d 958 (cleaned up), a defaulting party—which is how the district court apparently regarded Prestwich in spite of the fact that her attorney was present at trial—should not be subject to relief beyond that which was requested in the complaint, *see Holt v. Holt*, 672 P.2d 738, 741 (Utah 1983) ("A party to a lawsuit may voluntarily default and in so doing rely on the relief requested in the pleadings. A defaulting party should expect that the relief granted will not exceed or substantially differ from that sought in the complaint." (cleaned up)).

¶24    While we have some reservation in agreeing with the assessment of the district court that Prestwich was in default given that she was represented by counsel at trial,[7] her putative default status makes no difference here because the relief Watson received was identified in his petition, albeit obliquely. Watson asked that the relief he specifically requested be granted "together with such other and further relief and assistance as the Court may deem just and equitable in the premises." Moreover, "[w]hen an issue not raised in the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." Utah R. Civ. P. 15(b)(1). "A party may try an issue by implied consent by failing to object to the introduction of evidence related to the unpleaded issue." *Fibro Trust, Inc. v. Brahman Fin., Inc.*, 1999 UT 13, ¶ 8, 974 P.2d 288; *accord Reller v. Argenziano*, 2015 UT App 241, ¶ 18, 360 P.3d 768. Because there is no indication that Prestwich's counsel objected to having the issue of sole custody being awarded to Watson addressed at trial, Prestwich's implied consent here is obvious. In sum, Prestwich knew that custody of

---

7. As noted, Prestwich had been ordered to appear in person. *See supra* note 2. But it does not appear that the district court made an express ruling entering the default.

Child was on the table in light of the broad scope of Watson's petition. This broad scope—coupled with the implied consent of the parties to address sole custody going to Watson—makes this claim of error without merit.

### III. Admission of Allegations

¶25 Prestwich claims that the district court erred in not accepting as admitted certain allegations she identified in a request for admissions served on Watson. It is undisputed that Watson did not respond to the request for admissions. And as represented by Prestwich in her briefing on appeal, many of those admissions would have been harmful to Watson's case.

¶26 Rule 36 of the Utah Rules of Civil Procedure provides that a matter in a request for admissions "is admitted unless, within 28 days after service of the request, the responding party serves upon the requesting party a written response." Utah R. Civ. P. 36(c)(1); *see In re Discipline of Pendleton*, 2000 UT 77, ¶ 42, 11 P.3d 284 ("[The party] failed to timely respond to the . . . request for admissions. Thus, the trial court correctly concluded that the matters set forth in the . . . request were deemed admitted."). However, as a threshold matter, a request for an admission must be properly drafted before it can be deemed admitted absent a response. The rule provides, "A party may serve upon any other party a written request to admit the truth of any discoverable matter set forth in the request . . . . The matter must relate to statements or opinions of fact or of the application of law to fact." Utah R. Civ. P. 36(a).

¶27 And this is where Prestwich's claim of error falls short. She did not ensure that the record included the actual request for admissions that she served on Watson. Prestwich's record citation for the request served on Watson does not correspond to the Bates numbering in the record on appeal. *See supra* note 5. We have nevertheless diligently searched the record for the interrogatories

and admissions, but without success. The record is admittedly a jumble of myriad nonsensical filings, so it's entirely possible the document got lost in the mire. But we decline the implicit invitation to comb the record any more thoroughly than we already have in the off chance that the request for admissions might be buried in its nearly 4,600 pages. *See generally Prisbrey v. Prisbrey*, 2026 UT App 39, ¶ 23 & n.6, 588 P.3d 329 (noting the importance of "compliance with briefing and citation standards").[8] "A party bringing a claim of error before this court has the duty and responsibility to support such allegation by an adequate record. When an appellant fails to provide an adequate record on appeal, this court presumes the regularity of the proceedings below. And when crucial matters are not included in the record on appeal, the missing portions are presumed to support the action of the trial court." *State v. Case*, 2020 UT App 81, ¶ 19, 467 P.3d 893 (cleaned up). So, while the district court's failure to deem admitted the request for admissions is potentially troubling, we simply have no way of knowing—apart from Prestwich's unsupported characterization of the requested admissions—the content of the admissions or their propriety. In sum, because Prestwich has not provided an adequate record on this essential point, we decline the invitation to disturb the district court's decision not to admit the matters allegedly contained in Prestwich's request for admissions.[9]

---

8. We do know that the interrogatories and request for admissions were served on Watson because the certificate of service is in the record. But that is where the record stops. The actual interrogatories and request for admissions are nowhere to be found.

9. It bears mention that it was the GAL—not Watson—who responded to Prestwich's appellate argument on this front. We

(continued…)

## IV. Initial Custody Orders

¶28    Prestwich next argues that the district court abused its discretion in issuing its initial custody orders, specifically a writ of assistance, a temporary restraining order, and a preliminary injunction.

¶29    Prestwich asserts that the writ of assistance was improperly obtained and wrongfully executed because there was no evidence that she was anything but a capable and exemplary mother or that Child was in danger of imminent physical harm or of being taken out of the state. And she argues that the temporary restraining order and preliminary injunction were issued to punish her for perceived misconduct related to events surrounding the execution of the writ of assistance. Prestwich's claims are without merit.

¶30    The writ of assistance was issued only after Prestwich began to display troubling behavior. In issuing the writ, the court noted that Prestwich had not attended any of the five hearings related to temporary custody orders. And as the court stated in its findings supporting the writ, Prestwich's responses in court filings gave rise to serious concerns about her "mental state."

---

have concerns that the GAL lacked standing to address this issue. In this circumstance, we normally would conclude that the appellant should prevail. *See AL-IN Partners, LLC v. LifeVantage Corp.*, 2021 UT 42, ¶ 19, 496 P.3d 76 ("When an appellee fails to present us with any argument, an appellant need only establish a prima facie showing of a plausible basis for reversal. This is a lower standard than the typical burden of persuasion on appeal." (cleaned up)). To the extent that the GAL did lack standing, however, Prestwich has failed—even under the lower standard articulated in *AL-IN Partners*—to "establish a prima facie showing of a plausible basis for reversal" owing to the inadequate record presented on appeal. *See id.* (cleaned up).

Moreover, Prestwich had "not appeared to provide the court the opportunity to inquire on such concerns," and the GAL's efforts to ensure Prestwich's "cooperation" had "not been met well." The court also determined that Watson needed to have contact and parent-time with Child, starting without delay. Finally, the court expressed concern about Child's well-being in the situation. Based on these findings, the court issued the writ of assistance. Given these circumstances, we simply see no abuse of discretion in the court's issuance of the writ to assist Watson in exercising his parent-time.

¶31 The temporary restraining order issued in September 2021 and the later preliminary injunction in December 2021 by which Watson gained sole legal and physical custody were supported by multiple findings, including Prestwich's assault of the police officer when the writ of assistance was executed and her increasingly inappropriate communications with Child (for example, telling her that she had been "kidnapped," that Watson's "family are reptiles," that Child was a "victim," and that Watson was a "predator"). The GAL "readily" concluded that Prestwich's actions toward Child constituted "child abuse" and "emotional abuse" under Utah law. The GAL provided this summary: "[Child] has been exposed to some extremely troubling, I would even say delusional, ideations by her mother. [Child] has witnessed a parent who not only distrusts the police and law enforcement and the courts, but continually demonstrates that through her conduct." In light of her ideologies and the belief that "she is above the law," Prestwich, in the GAL's estimation, represented a "flight risk" such that contact with Child "would be extremely dangerous." Based on this troubling evidence, the court ultimately issued the preliminary injunction in favor of Watson having custody.

¶32 We see no abuse of discretion here. In other words, the court's conclusion was not "so lacking in support as to be against the clear weight of the evidence." *See Planned Parenthood Ass'n of*

*Utah v. State*, 2024 UT 28, ¶ 43, 554 P.3d 998 (cleaned up). Prestwich's clearly erratic behavior, unwillingness to abide by court orders, refusal to cooperate in parenting Child, and display of decisions and attitudes that caused Child distress certainly provided support for the conclusion that Child was in danger and in need of protection. Because Prestwich cannot show that the district court abused its discretion in shifting custody to Watson, this claim of error fails.

## V. Child Support

¶33    Prestwich next asserts that the district court erred in ordering child support without making the necessary findings of fact, most specifically in imputing income to her without first considering the required statutory factors. *See* Utah Code § 81-6-203(6)(b).

¶34    While we agree that the district court's factual findings are sparse, Prestwich never brought this issue to the attention of the district court. Moreover, as the court noted, the imputation of income was "[b]ased on the lack of information" from Prestwich. Thus, any error in the calculation of child support was the result of Prestwich's own reluctance to actively engage in the proceedings and object to the court's lack of factual findings or consideration of the statutory factors. "Generally, a party cannot raise an issue for the first time on appeal. Instead, the party must preserve the issue for appeal by presenting it to the trial court in such a way that the trial court has an opportunity to rule on that issue." *LaChance v. Richman*, 2011 UT App 40, ¶ 15, 248 P.3d 1020 (cleaned up); *see also Davis v. Davis*, 2011 UT App 311, ¶ 7, 263 P.3d 520 ("To preserve an issue for appellate review, a party must first raise the issue in the trial court, giving that court an opportunity to rule on the issue." (cleaned up)). By not raising this issue with the district court, Prestwich has failed to preserve it for review. Accordingly, we decline to consider it.

VI. Custody Determination

¶35    Prestwich next claims that the district court erred in failing to make the necessary findings in the custody determination. "In making custody determinations, a court must provide adequate and detailed findings of fact." *Blocker v. Blocker*, 2017 UT App 10, ¶ 15, 391 P.3d 1051. "The findings must be sufficiently detailed to ensure that the trial court's discretionary determination was rationally based. Specificity of findings is particularly important in custody determinations. This is so because the issues involved are highly fact sensitive." *Sukin v. Sukin*, 842 P.2d 922, 924 (Utah Ct. App. 1992) (cleaned up); *see also Twitchell v. Twitchell*, 2022 UT App 49, ¶ 21, 509 P.3d 806 ("A court's factual findings are adequate only if they are sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." (cleaned up)).

¶36    As with her challenge to child support, Prestwich has not preserved this issue. A party "waives any argument regarding whether the district court's findings of fact were sufficiently detailed when the plaintiff fails to challenge the detail, or adequacy, of the findings with the district court." *In re K.F.*, 2009 UT 4, ¶ 60, 201 P.3d 985 (cleaned up). A trial judge "has the opportunity to address the sufficiency of the evidence to support the findings in his or her judgment. But a trial judge does not have the chance to address the adequacy of the findings themselves, unless that issue is brought before him or her. Therefore, requiring a party to object to the adequacy of the detail of the trial court's findings before appeal allows the trial judge to address and correct, if necessary, the level of detail in his or her findings before the case moves forward." *Id.* ¶ 62; *accord Danneman v. Danneman*, 2012 UT App 249, ¶ 14, 286 P.3d 309. Here, Prestwich never challenged the sufficiency of the detail in the findings before the district court, making the issue unpreserved for appeal. Accordingly, we decline to address Prestwich's challenge to the level of detail of the district court's findings regarding custody.

CONCLUSION

¶37    The district court did not err in determining that Prestwich was a vexatious litigant and in issuing related orders to show cause. Nor did the district court grant Watson relief that he had not requested in his petition for parentage. Prestwich has not included a copy of the request for admissions made to Watson, depriving us of the opportunity to determine whether the court erred in refusing to deem those admissions admitted. The district court did not abuse its discretion in issuing the writ of assistance, the temporary restraining order, or the preliminary injunction. And Prestwich did not preserve the issues related to the district court's child support and custody determinations.

¶38    Affirmed.

_____